**FILED**

2012 May-03  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 08-AR-514-S |
| | } | |
| SHEP JONES CONSTRUCTION, | } | |
| INC., et al., | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

The court has before it cross motions for summary judgment, filed by plaintiff, Owners Insurance Company ("Owners"), doc. 72, and defendant, Elise Durbin ("Durbin"), doc. 73. Owners filed this declaratory judgment action to determine whether a policy of commercial general liability insurance it issued requires it to defend and/or indemnify defendants, F. Sheppard Jones and Shep Jones Construction, Inc. (collectively, "Shep Jones Construction"), from the claims asserted by Durbin in an underlying case then pending in the Circuit Court of Jefferson County, Alabama, styled *Elise Durbin v. F. Sheppard Jones d/b/a Shep Jones Construction, et al.*, CV-07-900051. For the reasons that follow, Owners's motion for summary judgment will be granted, and Durbin's motion for summary judgment will be denied.

## FACTS[1]

---

[1] The pertinent facts are largely undisputed. The court will evaluate each motion on its own merits, and to the extent inferences may be drawn from the undisputed facts, will view all

Shep Jones Construction is a general contractor, and in December 2004, it entered into a contract with Durbin to extensively remodel her home located in Mountain Brook, Alabama, including adding a second story.

On January 17, 2005, Owners issued a commercial general liability policy, numbered 38168193, to Shep Jones Construction. Owners's said policy contains a bodily injury general aggregate limit of $500,000.00 and a property damage general aggregate limit of $500,000.00.  The policy was in effect from February 3, 2005 to February 3, 2006, and was re-issued with a policy term of February 3, 2006 to February 3, 2007.  The policy was ultimately cancelled on December 9, 2006.

When Shep Jones Construction completed the renovation, Durbin moved back into her home in May or June 2006.  A dispute then arose about whether the quality of the services performed by Shep Jones Construction met the requirements of the parties' contract.  Durbin requested two inspections to find evidence of faulty workmanship, one in January 2007 and another in May 2008.

On January 16, 2007, Durbin filed suit in the Circuit Court of Jefferson County, Alabama, alleging she suffered damages arising from breach of contract, negligence, and negligent supervision by F. Sheppard Jones d/b/a Shep Jones Construction and/or Shep Jones

---

facts and inferences in the light most favorable to the non-moving party on each motion.

Construction, Inc., styled *Elise Durbin v. F. Sheppard Jones d/b/a Shep Jones Construction, et al.,* CV-07-900051. During the pendency of that action, on March 6, 2007, F. Sheppard Jones filed for voluntary Chapter 7 bankruptcy, resulting in a stay of Durbin's claims against him individually. Several months later, Durbin sought and obtained leave from the bankruptcy court to prosecute the lawsuit against F. Sheppard Jones to the extent of available insurance proceeds. On November 28, 2007, Owners filed a request for permissive intervention in the lawsuit, requesting to submit special verdict forms or special interrogatories, through the court, to the jury, should the case go to trial. The trial court denied Owners's motion. Owners provided a defense to Shep Jones Construction in the underlying lawsuit under a reservation of rights. In February 2009, Shep Jones Construction filed third party complaints against several of the subcontractors that performed work on Durbin's home. Shep Jones Construction settled with all of these subcontractors before trial of the underlying lawsuit. The amounts paid in settlement are not reflected in the record.

The lawsuit was tried February 22, 2010 to February 26, 2010, in the Circuit Court of Jefferson County, Alabama. The subcontractors did not participate in the trial. At trial, there was evidence presented, and counsel for Durbin argued, that Durbin suffered both property damage and mental anguish as a result of

Shep Jones Construction's alleged breach of contract and negligence. At the close of Durbin's evidence and at the close of all the evidence, defendants F. Sheppard Jones d/b/a Shep Jones Construction and Shep Jones Construction, Inc. filed a motion for judgment as a matter of law. The court partially granted the motion and dismissed F. Sheppard Jones d/b/a Shep Jones Construction from the suit, and further granted the motion as to Durbin's claims for negligence against Shep Jones Construction, Inc. The only cause of action the court allowed the jury to consider was breach of contract, and the court's jury charge included instructions to the jury on breach of contract alone. However, the court did instruct the jury on damages for both property damage and mental anguish. Durbin requested that the court submit the case to the jury using a special verdict form, separating out the damages recovered for mental anguish. Counsel for Shep Jones Construction, Inc., retained by Owners, did not independently request a special verdict form, but counsel did not voice any objection to Durbin's request for one. The court denied Durbin's request, and the jury was provided with a general verdict form. The verdict form stated: "We, the jury, find in favor of the plaintiff Elise Durbin and against the defendant Shep Jones Construction, Incorporated and assess plaintiff's damage in the amount of three hundred three thousand, five hundred dollars [$303,500.00]." The verdict form awarded general damages only and

did not set out whether the jury was awarding damages for property damage, mental anguish, or both.

Durbin appealed the trial court's decision to grant judgment as a matter of law on her claims of negligence against Shep Jones Construction, Inc.   After the parties fully briefed the issue of whether negligence should have been submitted to the jury, the Supreme Court of Alabama affirmed the trial court's decision without opinion on October 7, 2011, and denied rehearing on January 13, 2012.

## PROCEDURAL HISTORY

After the trial court in the underlying action denied Owners's motion for permissive intervention, Owners filed this complaint against Shep Jones Construction, Inc., F. Sheppard Jones, and Durbin on March 26, 2008, seeking a declaration that it owes no duty to defend or indemnify Shep Jones Construction, Inc. or F. Sheppard Jones from the complaint filed by Durbin in the Circuit Court of Jefferson County, Alabama.   Durbin answered on May 27, 2008.   Shep Jones Construction, Inc. was served on April 28, 2008, and F. Sheppard Jones was served on April 24, 2008.   After neither defendant answered within the required time, on June 6, 2008, Owners filed an application for an entry of default as to Shep Jones Construction, Inc. and F. Sheppard Jones for failure to answer, plead, or otherwise defend.   An entry of default was taken

by the Clerk on June 10, 2008.[2]  On joint motion of Owners and Durbin, the court ordered the declaratory judgment action stayed until final determination by the Alabama Supreme Court of issues arising from trial of the underlying lawsuit, and ordered the parties to file joint status reports on a monthly basis.  On January 31, 2012, the parties informed the court that the underlying lawsuit had been adjudicated to a final judgment and requested a status conference.  During a conference held February 7, 2012, the court stated that the case was ripe for cross motions for summary judgment.  Owners and Durbin subsequently filed motions for summary judgment, docs. 72 and 73, to which Durbin and Owners responded, docs. 77 and 78, and Owners and Durbin replied, docs. 79 and 80.

## DISCUSSION

In its motion, Owners seeks a declaration that it is not obligated to indemnify Shep Jones Construction[3] from the judgment

---

[2] Durbin argued to this court that Owners's filing this suit against F. Sheppard Jones and the entry of default against him was a violation of 11 U.S.C. § 362, because he filed Chapter 7 bankruptcy.  However, the court found that F. Sheppard Jones had been discharged in bankruptcy on June 12, 2007, meaning that there was no bankruptcy stay when this declaratory judgment action was filed and when the default was entered.

[3] The Owners policy was issued to "Shep Jones Construction." Owners initially contended that because the policy was issued to F. Sheppard Jones individually, and doing business as, Shep Jones Construction, and the underlying judgment was obtained against "Shep Jones Construction, Inc.," there is no coverage. Owners has abandoned this argument and now concedes that the insured under its policy is properly named "Shep Jones

entered by jury verdict in the underlying lawsuit in that it is not obligated to pay to Durbin any amount of the $303,500.00 judgment.[4] In her motion, Durbin requests that Owners's motion be denied and seeks a ruling that the entire jury verdict in the underlying lawsuit, or at least a portion of it as will be fully explained herein, is covered under the policy issued to Shep Jones Construction and that Owners be directed to pay Durbin the sum of the jury verdict plus interest.  Both parties base their arguments on the undisputed facts and the unambiguous language of the Owners policy.

Under Alabama law,[5] the insured bears the burden of establishing that a claim falls within the coverage of the policy, while the insurer bears the burden to prove that any policy exclusion applies.  *Chandler v. Alabama Mut. Ins. Co.,* 585 So. 2d 1365, 1367 (Ala. 1991).  However, in this case, an entry of default was taken in this court against the insured, Shep Jones Construction, for failure to answer, plead or otherwise defend. The Supreme Court of Alabama has also held that the burden is on **the party seeking coverage** to prove that coverage existed within

_____

Construction, Inc."  The court will refer to the insured in this opinion as "Shep Jones Construction."

[4] Owners no longer seeks a declaration that it was not obligated to defend Shep Jones Construction, as it initially requested in its complaint.

[5] The parties agree that this coverage dispute is governed by Alabama law.

the terms of the policy.  *Alabama Hosp. Ass'n Trust v. MASA*, 538 So. 2d 1209, 1216 (Ala. 1989).  It is thus Durbin's burden to show that the jury verdict in the underlying lawsuit falls within the coverage of Owners's policy issued to Shep Jones Construction, such that Owners must pay her the sum of the verdict.

Though it is Durbin's burden to prove coverage, Owners's primary argument is that there is no "occurrence" to support coverage under its policy because, under Alabama law, breach of contract is not an "occurrence" under a commercial general liability insurance policy.  Owners's policy covers only "bodily injury" or "property damage" that is caused by an "occurrence," as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I- COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies.

**b.** This insurance applies to "bodily injury" and "property damages" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

8

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   The Alabama Supreme Court has defined "accident" in the context of an "occurrence" in a commercial general liability policy as "an unintended and unforseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated" or "something unforseen, unexpected or unusual."   *Harford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005).

The trial court in the underlying lawsuit charged the jury on breach of contract only.  Owners cites several Alabama cases for the proposition that commercial general liability policies are not designed to provide coverage for business disputes arising out of breach of contract.  In *Reliance Insurance Company v. Gary C. Wyatt, Inc.*, 540 So. 2d 688, 691 (Ala. 1988), the Alabama Supreme Court held that breach of contract is not an "occurrence" under a commercial general liability policy, explaining:

> The portion of Essex's complaint with which we are concerned in this appeal is predicated upon the following alleged breach of contract: "Wyatt failed to procure liability insurance as required ... [and this] failure constitutes a breach of the lease agreement, and Essex has, and will, suffer damages as a direct, foreseeable, and proximate result of said breach." The breach of contract was the failure to procure liability insurance. This is not an "occurrence" that results in bodily injury or property damage. Batson's injury may go to the issue of damages sustained by this breach of contract, but it is not the

> "occurrence" that causes the breach of
> contract.   The contract had been breached,
> with or without Batson's injury.   The
> "occurrence" in this case is the breach of
> contract rather than the bodily injury to
> Batson.   We conclude that no coverage exists
> for the breach of contract, because the breach
> did not constitute an "occurrence" that
> resulted in bodily injury or property damage
> under the definitions within the policy, which
> was necessary to bring such claim within the
> policy coverage.

Perhaps a more instructive case is *Auto-Owners Insurance Company v. Toole*, 947 F. Supp. 1557 (M.D. Ala. 1996), in which the insurer argued that because the claims asserted against its insured, an auto salesman, arose out of contractual disputes, they are not "occurrences" under its commercial general liability policy, whose definition of "occurrence" mirrored the one in the Owners policy here.  *Id.* at 1563.  The federal court discussed the extent to which Alabama law addressed if and when events giving rise to a contract dispute fall within the standard definition of "occurrence," quoting the above language in *Reliance*, 540 So.2d at 691, but stating that it was unable to "lift from these comments any overall principle or principles that might guide the court in resolving the issue presented in the instant case." *Auto-Owners*, 947 F. Supp. at 1563.  Instead, the court declined to "adopt any broad holding that claims sounding in contract are not occurrences," and reasoned that in determining whether there is coverage, it should look to the "specific kind of claim being asserted," regardless of whether it is labeled a contract claim or

10

a tort claim, and look to "the purpose of the general liability
policy from which coverage is sought." *Id.* at 1563-64 (quoting
*City of Burlington v. Nat'l Union Fire Ins. Co.*, 655 A.2d 719, 722
(Vt. 1994)).  The court's analysis of why the plaintiff's breach of
contract claim is not an "occurrence" under its commercial general
liability policy is also applicable here:

> The court believes the following comments best
> explain why the events giving rise to the
> [breach of contract] counts should not be
> viewed as occurrences: "To allow
> indemnification under the facts presented here
> would have the effect of making the insurer a
> sort of silent business partner subject to
> great risk in the economic venture without any
> prospects of sharing in the economic benefit.
> The expansion of the scope of the insurer's
> liability would be enormous without
> corresponding compensation.  There is simply
> no reason to expect that such a liability
> would be covered under a comprehensive
> liability policy which has, as its genesis,
> the purpose of protecting an individual or
> entity from liability for essentially
> accidental injury to another individual, or
> property damage to another's possessions, even
> if, perhaps, the coverage of the policy has
> been expanded to cover other non-bodily
> injuries that sound in tort." [quoting
> *Burlington*, 655 A.2d at 722].
>
> Similarly here, this court would distort the
> purpose of the liability insurance policies in
> this case by applying them to the consumer
> transactions underlying the [breach of
> contract] claims . . . against Toole.  It is
> apparent from a reading of the policies
> between Auto-Owners and Toole that they were
> not intended to cover business transactions
> and business ventures, of a consumer nature or
> of a another kind.

11

*Id.* at 1564.  As in *Auto-Owners,* Durbin's breach of contract claim against Shep Jones Construction is not an "occurrence" under Owners's policy, which defines an "occurrence" as an "accident." The purpose of Owners's commercial general liability policy is to protect Shep Jones Construction from liability for essentially accidental injury to person or property, not to be a guarantee or a warranty that Owners stands behind the timeliness and quality of work Shep Jones Construction contracted to perform.  To hold otherwise would improperly expand the scope of Owners's liability to Shep Jones Construction at great risk to Owners.

In response to Owners's primary argument that a breach of contract is not an "occurrence," Durbin does not argue that the term "occurrence" in the Owners policy is ambiguous.  She does not cite any Alabama cases directly supporting her contention that Alabama law allows coverage for breach of contract actions under a commercial general liability policy, but merely points to treatises such as INSURANCE CLAIMS AND DISPUTES as well as case law from other jurisdictions that criticize a legal position that a breach of contract is not an "occurrence."  *See Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 673 N.W.2d 65, 76-77 (Wis. 2004) ("We agree that CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an

'occurrence.'. . . This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies in our case law."). Nor does Durbin address the aforementioned **Alabama** cases explaining why a breach of contract should not be considered a covered "occurrence" under commercial general liability policies such as this one.

In sum, Durbin has not met her burden of proving that the judgment she obtained, which was solely based on breach of contract, is an "occurrence" under Owners's commercial general liability policy. Because there is no "occurrence" causing either "property damage" or "bodily injury," no damages are recoverable under Owners's policy, and Owners is entitled to summary judgment and a declaration that it owes no indemnity to Shep Jones Construction.

There is an alternative reason why there is no coverage for Durbin's judgment that was based solely on breach of contract: Owners's policy contains a contractual liability exclusion, as follows:

> **2. Exclusions.**
>
> This insurance does not apply to:
>
> ***
>
> **b.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of a contract or agreement.

In Alabama, the effect of this kind of exclusion is that, unless a contract is specifically covered by it, an insurer is not liable for damages assumed by the insured under a contract. ALLEN'S ALABAMA LIABILITY INSURANCE HANDBOOK, § 10.02, at 214 (2d ed. 2008). Alabama courts have recognized that contractual liability exclusions identical to the one here operate to deny liability for "property damage" and "bodily injury" resulting from breach of contract. *See Carter v. Cincinnati Ins. Co.*, 435 So. 2d 42, 45 (Ala. 1983) (holding that there is no insurance coverage pursuant to a commercial general liability policy with a contractual liability exclusion, when the plaintiff only sought to recover for breach of an implied contract, because the claim "falls squarely within the clear and unambiguous terms of the exclusionary provision[]"); *Am. Nat. Prop. & Cas. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1296-97 (S.D. Ala. 2001) (discussing *Carter* and holding same); *Ajdarondinni v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993) (equivalent contractual liability exclusion in commercial general liability policy; jury in underlying suit returned verdict solely on the claims for breach of contract; court held that because the

14

policy "clearly excludes breach of contract claims from its coverage, insurer has no duty to pay the judgment").

Even if there was an "occurrence," the contractual liability exclusion in the Owners policy clearly operates to bar coverage, and Durbin's argument in opposition is unavailing. Durbin cites an Alabama Supreme Court case holding that an equivalent contractual liability exclusion did not exclude coverage for claims of breach of an express warranty, *Townsend Ford Inc. v. Auto-Owners Insurance Co.,* 656 So. 2d 360, 364-65 (Ala. 1995). But *Townsend Ford*, a declaratory action arising out of the sale of used automobiles, is distinguishable from the present case. In *Townsend Ford*, the complaint in the underlying lawsuit alleged that "[Townsend Ford, the insured] warrant[ed] that said automobile had in fact only been driven by a Ford Manager" and that "[Townsend Ford] breached said warranty by failing to deliver a conforming automobile." *Id.* In contrast here, the trial of the underlying lawsuit was based on breach of contract, not breach of express warranty. Durbin's complaint against Shep Jones Construction did not contain a breach of express warranty claim. No argument was made by counsel for Durbin to the jury based upon breach of express warranty. The jury was not instructed on breach of express warranty. ALLEN'S ALABAMA LIABILITY INSURANCE HANDBOOK notes that the court in *Townsend Ford* did not cite any authority for its refusal to extend the contractual liability exclusion to claims for breach of express warranty. §

10.02 at 215.  No other Alabama case has cited *Townsend Ford* for
its interpretation of the contractual liability exclusion.  In sum,
even if a breach of contract constituted an "occurrence" under
Owners's policy, Owners has met its burden of proving that the
contractual liability exclusion bars coverage for "bodily injury"
or "property damage" for which Shep Jones Construction is obligated
to pay damages by reason of its construction contract with Durbin.
Owners is thus entitled to summary judgment and a declaration that
it owes no indemnity.

The court could end its analysis here.  However, the court
will address Owners's alternative argument as to why its policy
affords no coverage to show that even if there was an "occurrence"
triggering coverage under the Owners policy, other policy
provisions bar coverage such that Durbin is not owed payment of the
jury's damages award.

Even if the fact that Durbin obtained a judgment premised on
breach of contract did not preclude coverage, Owners argues in the
alternative that the activity underlying the breach of contract
claim - Shep Jones Construction's alleged faulty workmanship – does
not constitute an "occurrence" under a commercial general liability
policy under Alabama law.  In *Town & Country Property, LLC v.
Amerisure Insurance Company*, __ So. 3d __, 2011 WL 5009777 (Ala.
October 21, 2011) (not yet released for publication), the Alabama
Supreme Court held that a general contractor's faulty workmanship

16

is not an "occurrence" under a general liability policy, explaining that "a CGL policy is intended to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property while a performance bond is intended to insure the contractor against claims for the cost of repair or replacement of faulty work." *Id.* at *6 (internal quotation marks and citation omitted).   In so holding, the court relied heavily on *U. S. Fidelity & Guaranty Company v. Warwick Development Company, Inc.,* 446 So. 2d 1021, 1023-24 (Ala. 1984), in which the court held that a comprehensive general liability policy does not provide insurance coverage to an insured contractor for faulty workmanship or non-complying materials because there was no "occurrence" as that term is defined by the policy.  *See also Berry v. South Carolina Ins. Co.,* 495 So. 2d 511, 512-13 (Ala. 1985) (roofing contractor's failure to complete construction job not "occurrence" under a general liability policy because it did not result from an accident, including continuous or repeated exposure to conditions, but "[r]ather, all of the 'damages' are related to the work done pursuant to the contract . . . there is not even a scintilla of evidence to support the Berrys' assertion that an occurrence leading to property damage took place")*.*

Even if a general contractor's faulty work could be considered an "occurrence," the Owners policy contains a "your work" exclusion, as follows:

17

**2. Exclusions.**

This insurance does not apply to:

\*\*\*

**k.** "Property damage" to "your product" arising out of it or any part of it.

**l.** "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard.

In the first Owners policy, effective February 2005 to February 2006, the "your work" exclusion contains an exception making it inapplicable to work performed by subcontractors, as follows: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." However, the renewed Owners policy, effective February 2006 to February 2007, contains an endorsement that removes this "subcontractor exception" from the "your work" exclusion.

Durbin agrees that faulty workmanship by a general contractor is not an "occurrence" under a commercial general liability policy, but argues that if the faulty work caused property damage to something that was not part of the contractor's work, then an "occurrence" may exist. Indeed, in *Moss v. Champion Insurance Company*, 442 So. 2d 26 (Ala. 1983), the Alabama Supreme Court held that there was an occurrence under an equivalent commercial general liability policy because the contractor's faulty roofing work ended up damaging areas of the house that were not involved in the

18

contractor's scope of the work (the ceiling, insulation, and furniture got wet when it rained). *Id.* at 29. Thus, areas of the building that were not being worked on by the contractor were damaged due to the contractor's faulty work and were covered under the commercial general liability policy. *Id.* This conclusion is reasonable in light of the fact that an "occurrence" is defined by the policy as an "accident," or something neither expected nor intended by the insured. *See Harford,* 928 So. 2d at 1011. The court emphasized in *Moss* that the rain damage to the existing property was an accident because the contractor did not expect or intend for it to happen. *Moss*, 442 So. 2d at 29. *See also United States Fed. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985) (holding that insurer was required to provide coverage to sewer-system contractor under the terms of the commercial general liability policy where contractor was sued for damage resulting from raw sewage flowing onto an adjacent landowner's property during construction).

In *Town & Country*, *supra*, the Alabama Supreme Court explained that its decisions on whether damage alleged to be the result of faulty workmanship is covered under a general liability policy have hinged on the nature of the damage caused by the faulty workmanship, and that this is illustrated by the different results reached in *Warwick* and *Moss*, despite the fact that the court was interpreting nearly identical commercial general liability contract

provisions.    2011  WL  5009777,  at  *4.    At  bottom,  "faulty workmanship itself is not an occurrence but [] faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to 'continuous or repeated exposure' to some other 'general harmful condition' (e.g., the rain in *Moss*) and, as a result of that exposure, personal property or other parts of the structure are damaged."  *Id.* at *5.

The  foregoing  establishes  that  to  prove  an  "occurrence," Durbin must prove that Shep Jones Construction's faulty work caused something to happen causing property damage to existing portions of her home outside of the scope of Shep Jones Construction's work. Durbin says that evidence was presented at trial in the underlying lawsuit that a stucco subcontractor damaged some windows and doors that already existed when the construction began, and she had to replace them.   An  examination  of  the  portions  of  the  trial transcript cited by Durbin indicates that Durbin did have to pay to replace several existing doors damaged by the stucco subcontractor that were not a part of her renovation under her contract with Shep Jones Construction.   *See* trial transcript at 1019-20.   However, Durbin's counsel later told the jury that the damaged doors that had  to  be  replaced  were  doors  that  Shep  Jones  Construction installed pursuant to the contract, not doors that already existed

before the renovation.[6]  Because the trial transcript is unclear,
Durbin has at least created an issue of fact as to whether there
was damage to the existing structure outside of the scope of Shep
Jones Construction's work that could constitute an "occurrence"
under the court's analysis in *Moss* and other cases like it.
Assuming only for the sake of argument that the court is incorrect
that breach of contract is not an "occurrence" and is not otherwise
excluded by the policy, Durbin has presented a jury question
whether there was an "occurrence" that triggered coverage under the
policy based on faulty workmanship that caused accidental damage to
existing portions of her home.  However, Durbin cannot establish
that any property damage occurred within the appropriate policy
periods, as required for coverage under the policy.  As noted, the
"your work" exclusion excludes coverage for property damage to Shep
Jones Construction's work, but the "subcontractor exception" to the
"your work" exclusion in the first policy provides coverage for
property damage to subcontractors' work.  Based on this, Durbin now
says that not Shep Jones Construction, but three subcontractors

_____

[6] Durbin's counsel told the jury: "Other examples of shoddy
work had to do with failure of the homebuilder to protect the
windows and exterior doors from the stucco man. . . . Again,
we've showed them to you.  The frames and the metal pieces of the
exterior windows and doors were scratched, dented, have nail
holes and have stucco and grout splatter on them.  Now, they
weren't replaced with items that were more expensive than Mr.
Jones put in the house.  **They were replaced with the exact same
types of doors and windows that Mr. Jones put in the house. . . .
What we did was we went and bought the ones to match the ones
that Mr. Jones put in the house.**"  Trial transcript at 1165-66.

(the framing contractor, the roofing contractor, and the HVAC subcontractor), performed all of the work that caused the property damage to her home, and that because they performed their work during the first policy period when the subcontractor exception was in effect (February 2005 to February 2006), the property damage is covered under the policy.  As an initial matter, this position is contrary to what Durbin argued to the jury at trial in the underlying lawsuit, i.e., that Shep Jones Construction's "shoddy work" caused **all** of her property damage.[7]  Indeed, the trial involved only a breach of contract action against Shep Jones Construction, because the subcontractors settled before trial.  In any event, the property damage allegedly caused by these subcontractors did not "occur" within the policy periods.  In Alabama, "[a]s a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed **but the time the complaining party was actually damaged.**"  *American States Ins. Co. v. Martin*, 662 So. 2d 245, 250 (Ala. 1995) (emphasis added).  The items of faulty workmanship by these three subcontractors went undetected until

---

[7] Durbin's counsel told the jury: "Another position they take is, we didn't do it, we didn't do it, the subs did it, it was the sub's problem, they did all that stuff, we didn't do it. . . . Well, it doesn't matter as between Ms. Durbin and Mr. Jones whether the problem was the subs.  That's his problem.  Ms. Durbin has a contract with Mr. Jones to build this house, and if a sub screwed up, it's his problem.  And if a sub is out of business, it's his problem, not Ms. Durbin's problem."  Trial transcript at 1168-69.

Durbin requested inspections to uncover areas of faulty workmanship. Indeed, the undisputed evidence shows that the damage caused by the roofing subcontractor was first discovered during the January 2007 inspection, which was during the effective dates of the second Owners policy **that did not contain the subcontractor exception.** The damage caused by the framing subcontractor and the HVAC subcontractor was first discovered during the May 2008 inspection, which was after the second Owners policy expired. From this, Owners argues that Durbin could not have been damaged until, at the earliest, the second policy was in effect, which did not provide coverage for damage to subcontractors' work, because Durbin did not know about the issues until the inspections revealed them. As such, even if there was an "occurrence," the Owners policy contains an exclusion for damage to the insured's "work." The policy also contains an exception to that exclusion for work performed by subcontractors, but that exception was removed during the second policy period. Based on the undisputed evidence, if any initially covered damages *were* suffered, they fall within the second policy period (if within Owners's policy period at all) and are excluded by the "your work" exclusion.

As a final matter, and again assuming the court is incorrect and there is some "accident" that constitutes an "occurrence" under the policy, and coverage is not otherwise excluded by the express terms of the policy, the court must address Durbin's argument that

even if she cannot recover on the claim for "property damage," the Owners policy also provides coverage for sums Shep Jones Construction becomes legally obligated to pay as damages because of "bodily injury," and the damages awarded in the underlying lawsuit fall within this coverage because some or all of the jury's award was for her mental anguish.[8]

Durbin testified at trial in the underlying lawsuit that she suffered mental anguish shortly after she moved back into her home in May or June 2006.  Owners's renewed policy to Shep Jones Construction was in effect during that period (February 2006 to February 2007).  The jury in the underlying lawsuit was instructed on both "property damage" and "mental anguish" with regard to damages to be awarded, if any, to Durbin for Shep Jones Construction's alleged breach of contract.  Durbin requested a special verdict form separating out the mental anguish damages. Counsel for Shep Jones Construction, retained by Owners, did not independently request a special verdict form, but did not voice an objection to Durbin's request for one.  The trial court denied Durbin's request, and the jury was provided only with a general verdict form, which did not separate out mental anguish damages

_____

[8] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time."  Under Alabama law, mental anguish qualifies as "bodily injury" for purposes of a commercial general liability policy.  *Am. States Ins. Co. v. Cooper,* 518 So. 2d 708, 710 (Ala. 1987).

from property damage.   The jury awarded Durbin $303,550.00 in general damages for Shep Jones Construction's breach of contract. There is no way to know what portion, if any, of this amount the jury intended to allocate for mental anguish.

The question thus arises which party has the burden of allocating the verdict, and in what court, in order to ascertain the amount of the damages for which the insurer may be responsible. In line with the majority of courts, the Alabama Supreme Court has required the party seeking to recover under the policy to prove the apportionment of the verdict in order to show that some or all of it was for covered damages. *Alabama Hosp. Ass'n Trust,* 538 So. 2d at 1209.   Durbin attempts to meet this burden to allocate the jury's verdict, but her attempts fail.   She argues that since the trial court submitted mental anguish to the jury, "some or all of the jury verdict included damages for mental anguish, suffered during the policy period and therefore, are covered under the second liability policy issued by Owners."   This statement is pure conjecture.   Simply because the jury was instructed on mental anguish does not mean the jury awarded anything whatsoever for mental anguish.   In the alternative, Durbin points out that Shep Jones Construction argued in closing arguments that the most it should have cost Durbin to repair the construction defects to her home was $50,000.00.   From this, Durbin argues that the $253,550.00 remaining jury verdict ($303,550.00 minus $50,000.00) must have

been for mental anguish.  This statement is also guesswork, because the jury was under no obligation to accept any amount of damages suggested by counsel during closing arguments.

At bottom, even if there was an occurrence giving rise to coverage, Durbin cannot meet an "impossible burden of proof" because there is no way to know if any or all of the jury's general verdict was for covered "bodily injury" damages.  *See Duke v. Hoch*, 468 F.2d 973, 980 (5th Cir. 1972).  Relying on *Duke v. Hoch*, which is a Fifth Circuit case applying Florida law, Durbin argues that because counsel for Shep Jones Construction – retained by Owners – did not request a special verdict form specifying which types of damages were being awarded, Durbin is relieved of this burden and is automatically entitled to the entire damages award.  Even if *Duke* were controlling law, it is distinguishable.  In *Duke*, the court stated that the burden of apportioning the damages award is normally on the party seeking to recover from the insurer, unless that party is for some reason relieved of this burden.  *Id.* at 978. The court held that the insured is relieved of this burden when "the insurer fail[s] to fully advise its insureds of the divergence of interest between it and them with respect to the [use of an allocated] verdict."  *Id.* at 979-80.  The court further held that the insurer is "required to make known to the insured the availability of a special verdict and the divergence of interest" between the insurer and insured "springing from whether damages

26

[a]re or [a]re not allocated." *Id.*

There is no evidence here that the burden of persuasion should have shifted or now shifts to Owners.  Owners tried to intervene in the underlying lawsuit for the specific purpose of submitting a special verdict form or interrogatories to the jury, serving its motion to intervene on counsel for Shep Jones Construction, but the trial court denied its motion.  Owners then filed this declaratory judgment action against Shep Jones Construction and Durbin after being denied the right to intervene.  Shep Jones Construction, the insured, was fully informed and aware of the coverage issues in the this matter during the pendency of the underlying lawsuit. Although counsel for Shep Jones Construction – retained by Owners – did not join in Durbin's request for a special verdict form, it also did not oppose it.  If *Duke* is persuasive authority, under these circumstances, Owners fulfilled any duty required by *Duke* to make known to Shep Jones Construction the availability and purpose of a special verdict form.  There is no reason why Durbin should be relieved of her burden, as the one seeking coverage, to prove the apportionment of the damages award into covered and uncovered damages.  As such, even if there was otherwise an "occurrence" giving rise to coverage for damages Shep Jones Construction had to pay for "bodily injury," Durbin has failed to establish that any part of the jury's verdict was for covered damages.

**CONCLUSION**

The dispositive issue in this action is whether a jury verdict based solely on breach of contract is covered by a general commercial general liability policy. A breach of contract is not an "occurrence" (defined as an accident by the policy). Every other matter discussed above is unnecessary to the decision, but the court chose not to ignore them.

Owners is entitled to summary judgment and a declaration that it owes no indemnity to Shep Jones Construction in that it owes no payment of the jury's damages award to Durbin. It follows that Durbin's motion for summary judgment is due to be denied. A separate order effectuating this opinion will be entered.

DONE this 3rd day of May, 2012.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE